IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| | Case. No.   09-70208JAD |
| AMY K. KANOUR, | |
| | Chapter   7 |
| Debtor. | |
| | |
| JAMES R. WALSH, ESQ. | |
| (Trustee for the Bankruptcy | |
| Estate of Amy K. Kanour), | Adv. No.   09-07030JAD |
| | |
| Plaintiff, | Doc. No.   1 |
| v. | |
| | |
| GREGORY S. NEEPER, | |
| | |
| Defendant. | |

### MEMORANDUM OPINION[1]

The matter before the Court is the Complaint filed by the chapter 7 trustee, James R. Walsh, Esq. (the "Trustee"), to recover an alleged fraudulent transfer pursuant to 11 U.S.C. §§ 544, 548 and 550.[2] For the following reasons the Court finds the Trustee has failed to establish that he may avoid Ms. Amy K. Kanour's

---

[1] This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

[2] The parties do not dispute this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (H).

(the "Debtor") transfer of her one-half equity interest in real property known as 9091 Greenwood Rd. Curwensville, PA 16883 (the "Greenwood Road Property").

## Background

On May 8, 2006, the Debtor and Gregory S. Neeper (the "Defendant") acquired the Greenwood Road Property for $100,000. At the time of acquisition, the Debtor and Defendant were involved in a personal relationship and purchased the Greenwood Road Property as tenants in common.

On March 15, 2007, a residential appraisal of the Greenwood Road Property was completed by Edward J. Sopic, who provided an estimated value of $112,000.

By March 29, 2007, the relationship between the parties had deteriorated and the Debtor conveyed her undivided one-half interest in the Greenwood Road Property to the Defendant (the "Transfer"). At the time of Transfer, the Greenwood Road Property was encumbered by a mortgage with an outstanding balance of approximately $90,000.

Two-years later, on March 30, 2009, the Defendant sold the Greenwood Road Property to a third-party for $120,000.

The Debtor commenced her voluntary chapter 7 bankruptcy case on or about February 26, 2009. Following the filing of the Debtor's bankruptcy case, the Trustee initiated this Adversary Proceeding against the Defendant seeking to recover the value of the Debtor's one-half interest in the Greenwood Road Property

pursuant to 11 U.S.C. §§ 544, 548 and 550.[3] A trial was held on May 18, 2010. Following the filing of post-trial memoranda, the Court took the matter under advisement. The matter is now ripe for decision.

### **Discussion**

The Trustee bears the burden of proving, by a preponderance of the evidence, each element of his constructive fraudulent transfer claim. See Bohm v. Dolata (In re Dolata), 306 B.R. 97, 117 (Bankr. W.D. Pa. 2004) (citations omitted); see also Leibersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.), 280 B.R. 103, 115 (Bankr. E.D. Pa. 2002).

Section 548(a)(1) of the Bankruptcy Code states, in pertinent part, that:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – . . .
>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer ...; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer . . .

11 U.S.C. § 548(a)(1).[4]

---

[3] The second count of the Trustee's Complaint also sought recovery of the Debtor's transferred interest in the Greenwood Road Property pursuant to 12 Pa. C.S.A. § 5105.

[4] The provisions of 11 U.S.C. §548 are analogous to the constructive fraud provisions of Pennsylvania's fraudulent transfer statute found at 12 Pa. C.S.A. § 5105. As such, the above analysis applies with equal force to any state law based fraudulent transfer claim that is asserted by the Trustee.

The parties do not dispute the Transfer occurred on March 29, 2007, within the two-year period prior to the filing of the Debtor's bankruptcy case, or that the Transfer constitutes a "transfer of an interest in property of the debtor." (See Dkt. # 16, Adv. No. 09-07030JAD, *Joint Pre-Trial Statement*, p. 9).[5] However, two issues were raised at trial. One issue was whether the Debtor was "insolvent" at the time of the Transfer, or was rendered "insolvent" by the Transfer; and the second issue was whether the Debtor received "reasonably equivalent value" in exchange for the Transfer. By this Memorandum Opinion, the Court addresses only the solvency issue.

**I.**

Section 101(32) of the Bankruptcy Code defines the term "insolvent." This section of the Bankruptcy Code reflects a "balance sheet" test for insolvency,[6] and

---

[5] All subsequent Dkt. #s refer to Adv. No. 09-07030JAD unless otherwise noted.

[6] Although not mentioned by the Trustee, 11 U.S.C. § 548(a)(1)(B)(ii) also includes relief for fraudulent transfers if the debtor was rendered "insolvent" in an "equitable" sense. Section 548(a)(1)(B)(ii)(III) states that a debtor may be insolvent for purposes of 11 U.S.C. § 548 if they "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . . ." This form of "insolvency" requires the Trustee to prove the debtor's subjective intent to accumulate debts beyond their ability to repay those debts as they mature. See C.F. Foods, 280 B.R. at 115; see also Dolata, 306 B.R. at 134. Equitable insolvency is also reflected in the Pennsylvania fraudulent transfer statute, and is defined as the inability of the Debtor to pay debts as they become due. See Moody v. Security Pac. Business Credit, 971 F.2d 1056, 1064 (3d Cir. 1992) (citing Larrimer v. Feeney, 192 A.2d 351, 353 (Pa. 1963)).

provides that an individual is "insolvent" when the sum of the individual's assets is greater than the sum of his or her liabilities.[7] 11 U.S.C. § 101(32)(A).

When contemplating recovery of a constructively fraudulent transfer, "solvency is measured at the time the debtor transferred value, not at some later or earlier time." Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.), 92 F.3d 139, 154 (3d Cir. 1996) (citing Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 648 (3d Cir. 1991)).

### A.

The Trustee insists the Debtor was insolvent at the time of the Transfer and offered the testimony of the Debtor and the admissions in her bankruptcy schedules as proof of her alleged insolvency. At trial, the Defendant attempted to minimize the Debtor's testimony by citing the Debtor's prior inconsistent testimony taken at her deposition to prove she was solvent at the time of the Transfer.

The asset values, which are the subject of bona fide dispute between the parties, are the value of the Debtor's equity interest in two pieces of real property.[8]

---

[7] While the language of § 101(32) refers to an "entity," § 101(15) of the Bankruptcy Code states the defined term "entity" includes a natural person, such as the Debtor. See 11 U.S.C. § 101(15).

[8] The Trustee and Defendant do not dispute the value of several Debtor assets at the time of the Transfer. For instance, the parties agree to the value of the jewelry, clothing and home furnishings owned by the Debtor. In addition, the parties do not dispute the Debtor had approximately $500.00 in cash and/or bank account assets or the Debtor received an income tax refund in the amount of $5,873.00 prior to the Transfer. Finally, parties agree the Debtor owned a 2003 Jeep Liberty at the time of the Transfer, in which she maintained no equity.

The first is the Greenwood Road Property and the second is a property commonly known as 2120 Highview Rd. Clearfield, PA 16830 (the Highview Property), which the Debtor owns as a tenant in common with her ex-husband. (See Dkt. #13, "Exhibit 4," Schedule A).

The Defendant insists the Debtor maintained an equity interest of $7,479 in the Highview Property at the time of the Transfer. (See Dkt. #25, *Post-Trial Brief*, p. 8). In support of this figure the Defendant points to the $65,000[9] purchase price paid by the Debtor and her ex-husband in 2001.[10] (See Audio Recording of Hearing Held in Courtroom D, 5/18/2010 (3:22 - 3:24 PM)). Conversely, the Trustee suggests the Debtor enjoys a significantly smaller equity interest of only $1,154 in the Highview Property based on the $52,350 value listed in the Debtor's schedules filed in March of 2009. (See Dkt. #24, *Trustee/Plaintiff's Post-Trial Brief*, p. 8 n.3).

The equity figure of $7,749 will be accepted by the Court for the purpose of calculating the Debtors assets at the time of Transfer. In so doing, this Court accepts the property valuation based on the actual sale price of the Highview

---

[9] At trial, the Defendant's counsel elicited testimony from the Debtor that reflected an actual purchase price of $65,500 for the Highview Property. (See Audio Recording of Hearing Held in Courtroom D, 5/18/2010 (3:08 - 3:09 PM)). For purposes of the solvency calculation this $500 difference in the purchase price is immaterial.

[10] $7,749 = $65,000 [real property value] - $50,042 [mortgage balance] / 2 [undivided one-half interest]

Property in 2001. Despite the amount of time that elapsed between the Debtor and her ex-husband's purchase of the Highview Property and the Transfer, the Trustee failed to produce any evidence as to the property's depreciation or a change in market conditions that would account for the significant decrease in the market value alleged in the Debtor's schedules. As a consequence of this lack of evidence, the Court is forced to accept the best available evidence concerning the value of the Highview Property provided by its prior actual sales price.[11]  See Webb Mtn, LLC v. Exec. Realty P'ship, L.P. (In re Webb Mtn, LLC), 420 B.R. 418, 435 (Bankr. E.D. Tenn. 2009) (" '[t]he best evidence of the fair market value of a property would be a sale, . . . in the absence of a sale the Court may rely upon other valuation methodologies[,]' including the testimony of expert real estate appraisers.") (quoting In re Hannigan, 2005 Bankr. LEXIS 2445, 2005 WL 3275485, at *1 (Bankr. D. Mass. Oct. 3, 2005)).

With regard to the Greenwood Road Property, the Defendant asserts the Debtor maintained an equity interest worth $11,000 at the time of Transfer. In support of this figure the Defendant points to a bank appraisal conducted two

---

[11]The Court recognizes the resulting equity figure does not likely reflect an accurate balance due on the Highview Property mortgage as of the date of Transfer. However, the Trustee failed to present any evidence as to the purported mortgage liability on the Highview Property in March of 2007 or the terms of a mortgage note from which the Court would be able to make a reasonable estimation of the balance due as of the Transfer date. Consequently, the Court is forced to accept the mortgage balance figure of $50,042 provided in the Debtor's schedules.

weeks prior to the Transfer valuing the Greenwood Road Property at $112,000. Dkt. #25, *Post-Trial Brief*, p. 3). Conversely, the Trustee asserts the Debtor's equity interest is much larger because the Greenwood Road Property should be valued at $120,000, reflecting its actual sale price two-years following the Transfer. (See Dkt. #24, *Trustee/Plaintiff's Post-Trial Brief*, p. 4 and Dkt. #13, "Exhibit #3").

This Court finds the fair market value of the Greenwood Road Property at the time of the transfer is $112,000. Under the unique facts and circumstance of this case, this Court finds the better measure of fair market value for the Greenwood Road Property is the appraisal conducted only two weeks prior to the transfer in question. The Court is particularly persuaded by the fact that the appraisal was conducted much closer in time to the actual transfer of the Debtor's interest. (See Dkt. #14, "Exhibit A"). In addition, the reliability and accuracy of the appraisal figure is not genuinely in dispute as the parties stipulated to the expertise of the appraiser who testified at the hearing. (See Audio Recording of Hearing Held in Courtroom D, 5/18/2010 (3:23 - 3:24 PM)). Finally, both the appraisal expert and the Defendant testified that an improvement to the Greenwood Road Property in the form of two additional bedrooms was not completed at the time of the Transfer, thereby accounting for the increase in value at the time of its eventual sale. (See id. at (3:25- 3:27 PM) and (3:43 - 3:45 PM)).

In sum, the Court finds based on the evidence of record and testimony presented at the trial that Debtor's assets, on the date of the Transfer, were as follows:

| Item | Value |
| --- | --- |
| Income Tax Refund | $5,873.00 |
| Jewelry | $200.00 |
| Home Furnishings | $500.00 |
| Clothes | $500.00 |
| Cash | $400.00 |
| 401K Retirement Fund | $1,000.00 |
| 2120 Highview Rd. Property | $7,749.00 |
| 1091 Greenwood Rd. Property | $11,000.00 |
| **TOTAL BEFORE TRANSFER** | **$27,222.00** |
| **TOTAL AFTER TRANSFER** | **$16,222.00** |

### B.

Many of the Debtor's liabilities as of the date of Transfer are not genuinely disputed by the parties.[12] However, the parties vehemently contest the amount of the Debtor's balance on her CitiCard and the outstanding balance on a loan/line of credit held by the Timberland Federal Credit Union ("Timberland").

---

[12] By way of example, there is little dispute that the Debtor carried a balance of approximately $250.00 on her Victoria's Secret credit card or a balance of approximately $800.00 on her Capital One credit card in March of 2007. In addition, the Debtor's testimony at trial that she maintained a balance of $3,500.00 on a loan from County National Bank was uncontested and the Debtor's conflicting recollection concerning her debt to Stoneworker's Federal Credit Union presented a nominal difference of less than $500.00.

The Debtor testified at trial she believed the balance on her CitiCard to be approximately $10,000 in March of 2007. The Defendant challenged this amount, suggesting the Debtor's balance was less than $3,000 based on the Debtor's deposition testimony of October 13, 2009. (See Dkt. #25, *Post-Trial Brief*, pp. 6-7). The Court finds the Debtor's prior deposition testimony, offered closer in time to the date of the transfer, to be more convincing. This conclusion is supported by the Debtor's testimony that, since her deposition, she had not reviewed any documents concerning her liabilities during the pertinent time period. (See Audio Recording of Hearing Held in Courtroom D, 5/18/2010 (3:02 - 3:05 PM)). Therefore, as a conservative estimate, this Court finds the balance on the Debtor's CitiCard as of the date of Transfer was $3,000.

The Defendant also confronted the Debtor with portions of her deposition indicating she was completely unaware of the amount, if any, she was indebted to Timberland at the time of the Transfer, when the liability was incurred, or how her balance of her liabilities had accrued. (See id. at (3:06 - 3:08 PM); see also Dkt. #25, *Post-Trial Brief*, pp. 7-8). Despite the Debtor's several attempts to explain why she took the loan/line of credit from Timberland, when pressed, the Debtor admitted she really did not know exactly when she borrowed the funds. (See id. at (3:06 - 3:08 PM)). Therefore, no persuasive evidence is of record which

suggests that the Debtor had any liability to Timberland as of the date of the Transfer.

As a result of the foregoing, the Court is persuaded based on the evidence of record and testimony presented at the trial that the Debtor had $11,569 in liabilities as of the date of the transfer. These liabilities are itemized as follows:

| Obligation | Amount |
|---|---|
| CitiCard CC | $3,000.00 |
| Victoria's Secret CC | $250.00 |
| Capital One CC | $800.00 |
| County National Bank | $3,500.00 |
| Timberland Federal Credit Union | $0.00 |
| Stoneworker's Credit Union | $4,019.00 |
| **TOTAL** | **$11,569.00** |

### C.

As determined by the Court, the balance of the Debtor's liabilities on the date of the the Transfer was $11,569. This amount does not exceed the amount of the Debtor's assets either before ($27,222) or after ($16,222) the Transfer. As a result, it is clear the Debtor was neither "insolvent" as or the time of nor "became insolvent" as a result of the conveyance of her one-half equity interest in the Greenwood Road Property.[13] The Trustee has herefore failed to satisfy his

---

[13]With regard to "equitable insolvency" this Court, once again, finds that as a result of the Debtor's inconsistent testimony, the Trustee has failed to carry his burden of proof. At trial, the Defendant presented evidence that the Debtor unequivocally testified during her deposition that she was "current" on all of her bills (See Audio Recording of Hearing Held in Courtroom D, 5/18/2010 (3:11 - 3:13 PM)). However, the Debtor attempted to backpedal from
(continued...)

burden of proof with regard to the Debtor's "insolvency" as a result of the Transfers identified in this Adversary Proceeding. Judgment in favor of the Defendant dismissing this Adversary Proceeding is warranted.

In addition, because the Court has concluded the Debtor was solvent at the time of the Transfer and immediately thereafter, the Court is not required to determine whether the Debtor received "reasonably equivalent value" in exchange for the transfer of her interest in the Greenwood Road Property.

*[Remainder of Page Intentionally Left Blank]*

---

[13](...continued)
these statements when testifying at trial, insisting that she was "frequently late" in paying certain obligations. (See id.). When questioned by Defendant's counsel as to exactly which obligations were not paid in a timely fashion, the Debtor provided vague answers concerning allegedly late payments on her CitiCard and the Timberland loan. (See id. at (3:09 - 3:11 PM)). Aside from the Debtor's conflicting testimony, the Trustee failed to provide any evidence as to whether the Debtor was making timely payments on her debts in March of 2007. As such, the Trustee has failed to prove by the preponderance of the evidence that the Debtor was "equitably insolvent" at the time of the Transfer.

## Conclusion

The Trustee has failed to meet his burden of proof that the Debtor was insolvent at the time of the Transfer or became insolvent because of it. As a result of the Trustee's failure to satisfy his burden, this Court finds the Debtor's transfer of her one-half equity interest in the Greenwood Road Property to the Defendant <u>cannot</u> be avoided as a constructively fraudulent transfer. An appropriate order will follow.

Date: July 1, 2010

**JEFFERY A. DELLER**
U.S. Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL COPY TO:**

James R. Walsh, Esq.
Roger Poorman, Esq.
David J. Hopkins, Esq.
Kenneth P. Seitz, Esq.
Office of the U.S. Trustee

**FILED**

JUL 01 2010

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA